UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23627-CV-COHN/OTAZO-REYES
(Case No. 13-20339-CR-COHN)

RIGOBERTO CABRERA,

    *Pro Se* Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon *Pro se* Movant Rigoberto Cabrera's ("Movant" or "Cabrera") Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereafter, "Amended Motion to Vacate") [D.E. 9]. This case was referred to the undersigned for a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters by the Honorable James I. Cohn, United States District Judge [D.E. 31, 33]. For the reasons stated below, the undersigned RESPECTFULLY RECOMMENDS that Cabrera's Amended Motion to Vacate be DENIED.

## THE UNDERLYING CRIMINAL CASE

On May 14, 2013, a grand jury charged Cabrera in Case No. 13-20339-CR-COHN (hereafter, "Case 13-20339") with various tax-related fraud and money laundering offenses. See Indictment [Case 13-20339, D.E. 1]. On May 22, 2013, Jose M. Herrera, Esq. ("Attorney Herrera") entered a temporary appearance on behalf of Cabrera [D.E. 10]. On June 5, 2013, Attorney Herrera entered his permanent appearance [D.E. 25]. On September 10, 2013, a grand

jury returned a Superseding Indictment charging Cabrera with the following offenses:

| | |
|---|---|
| Count 1: | Conspiracy to defraud the government with respect to claims, from January 24, 2009 to March 30, 2010, in violation of 18 U.S.C. § 286. |
| Counts 2-9 & 11-20: | False, fictitious and fraudulent claims, on various dates spanning from March 14, 2009 to March 30, 2010, in violation of 18 U.S.C. § 287 |
| Count 21: | Conspiracy to commit wire fraud, from January 24, 2009 to March 30, 2010, in violation of 18 U.S.C. § 1349. |
| Counts 22-25: | Wire fraud, on various dates, spanning from April 3, 2009 to April 20, 2010, in violation of 18 U.S.C. § 1343. |
| Count 26: | Conspiracy to commit money laundering, from December 18, 2009 to May 20, 2010, in violation of 18 U.S.C. § 1956(h). |
| Counts 27-30: | Money laundering, on March 8, 2010 and May 4, 2010, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). |

See Superseding Indictment [Case 13-20339, D.E. 50].[1]

On November 4, 2013, a jury trial began as to Cabrera [Case 13-20339, D.E. 90]. On November 12, 2013, the jury found Cabrera guilty as to Counts 1-9 and 11-30. See Jury Verdict [Case 13-20339, D.E. 90]. On January 29, 2014, Cabrera was sentenced to a total term of imprisonment of 292 months, consisting of the following terms: 120 months as to Count 1, 60 months as to Counts 3-9 and 11-20, and 240 months as to Counts 21-30, all to be served concurrently; plus 52 months as to Count 2, to be served consecutively to the terms imposed as to Counts 1, 3-9, 11-20 and 21-30. See Amended Judgment [Case 13-20339, D.E. 126].

On February 7, 2014, Cabrera filed a Notice of Appeal [Case 13-20339, D.E. 128]. On February 24, 2014, Richard Rosenbaum, Esq. ("Attorney Rosenbaum") was appointed to represent

---

[1] Co-defendant Carlos Perez ("Perez") was charged in Counts 1, 2-4, 6-11, 14, 16, and 21-23 of the Superseding Indictment. Id. On September 19, 2013, Perez pled guilty to Counts 1 and 21 of the Superseding Indictment. See Minute Entry [Case 13-20339, D.E. 66]. On December 12, 2013, Perez was sentenced to a term of imprisonment of 33 months as to Counts 1 and 21, and the remaining charges against him were dismissed. See Judgment [Case 13-20339, D.E. 110].

2

Cabrera on appeal pursuant to the Criminal Justice Act ("CJA").  See Minute Entry [Case 13-20339, D.E. 135].

On March 8, 2016, the Eleventh Circuit Court of Appeals affirmed Cabrera's conviction and sentence, rejecting his arguments that: the evidence against him was insufficient; the government had violated his Fifth Amendment right to a fair trial and his due process rights; and the district court had miscalculated his guidelines range.  See United States v. Cabrera, 635 F. App'x 801 (11th Cir. 2015).  The appellate court described the case against Cabrera as follows:

> The federal government discovered that Cabrera had masterminded an income tax fraud scheme that worked as follows. Cabrera and his associates would tell taxpayers they were entitled to tax refunds and offer to help the taxpayers get the refunds in exchange for a cut of the refund plus a fixed fee. Taxpayers who accepted the offer of services would give their names, W-2s, and other basic identifying information to Cabrera or his associates, who would electronically file the taxpayers' returns. The returns fraudulently claimed unfounded refunds based on Form 2439, an obscure IRS form that allows taxpayers a refund for taxes already paid on previously taxed "undistributed long term capital gains." The capital gains identified in the taxpayers' Form 2439s were falsely attributed to shell companies set up by Cabrera and his cohorts, who electronically filed substantially identical Form 2439s for dozens of people, including for Cabrera himself. In many cases, they used unsuspecting third parties' unsecured wireless networks to file the returns, so that it looked like the returns came from people unaffiliated with the scam.
>
> As a result of the scheme, the IRS erroneously paid millions of dollars in undue refunds. When the refunds arrived, Cabrera or an associate would coordinate with the taxpayers to collect Cabrera's share. Cabrera arranged with Elias Obando to create new shell companies with bank accounts into which Cabrera's share of the refunds were deposited. Thus laundered, the funds were then withdrawn and turned over to Cabrera.
>
> A federal grand jury indicted Cabrera for conspiring to defraud the government by submitting false tax returns, making false, fictitious, or fraudulent claims on the government, conspiring to commit wire fraud, committing wire fraud, conspiring to launder money, and laundering money. Cabrera's case was tried before a jury for five days. On the first day, the government introduced spreadsheets generated by the IRS's electronic fraud detection system. The spreadsheets catalogued certain information about electronically-filed returns, including the name on the return, the internet protocol (IP) address from which the return was filed, and the date the return was filed. Although Cabrera objected on the ground that the IRS agent

testifying about the spreadsheets was not sufficiently familiar with how they were generated, the district court overruled Cabrera's objection and admitted the spreadsheets into evidence.

The government presented dozens of witnesses and scores of exhibits tying Cabrera to the fraudulent returns and to attempts to launder the proceeds. IRS agents testified about the striking similarities between all of the other Form 2439s involved in the case and Cabrera's own fraudulent return. An IRS agent told the jury that Cabrera had amended his fraudulent return only after the IRS agent threatened him with prosecution, and that Cabrera nevertheless persisted in lying about amended return. Some taxpayers told the jury about meeting with Cabrera and agreeing to let him file their taxes in exchange for promises to pay a percentage of the refunds they received to companies controlled by Cabrera. The jury heard from Cabrera's associates who explained that he paid them to recruit taxpayers and that he either filed the fraudulent returns himself or instructed others how to file them. Obando told the jury that Cabrera had tasked him with setting up shell companies for use in laundering the proceeds from the scam. The government introduced bank records tracking the proceeds from the fraudulently obtained refunds — from taxpayers' bank accounts into the accounts of shell companies Cabrera ran, and then into Cabrera's bank account. An IRS computer expert even showed the jury that Cabrera's electronic fingerprints were all over the documents used in the scam. And on and on. The government's case was thorough and compelling.

Near the end of its case-in-chief, the government called IRS agent Karyn Calabrese to testify about the nature and scope of Cabrera's scam. After Calabrese noted that some of the fraudulent returns had been submitted from Marcelle Boardman's unsecured residential IP address, the government asked if she had been able to link Boardman's IP address to any other returns. Calabrese responded: "I think there were an additional 27 tax returns that we didn't present here," at which point Cabrera's counsel objected and asked for a sidebar. At the sidebar, Cabrera's counsel argued that the reference to the additional 27 returns involved "uncharged crimes" and information that had not been disclosed before trial. The district court overruled the objection and denied Cabrera's counsel's motion for a mistrial. The court then asked Cabrera's counsel if he wanted a curative instruction, to which Cabrera's counsel replied "Okay[,] [t]hat is satisfactory." The court promptly instructed the jury that Cabrera was "only on trial for those crimes charged in the indictment and nothing more," and the government continued examining Calabrese.

Later in Calabrese's testimony, the government asked if Carlos Mara's tax return — which was not among the returns for which the government charged Cabrera — was among those reflected in the spreadsheets. Cabrera's counsel objected and moved to strike, again arguing that the government was seeking to introduce evidence of uncharged crimes about which there had been no discovery. The court overruled Cabrera's objection and allowed the testimony because Calabrese was addressing returns that "were all filed during the period of time that the conspiracy

4

has been alleged in the indictment." Calabrese proceeded to answer the government's question, explaining that Mara's return had been filed from an IP address associated with Cabrera and one of his shell companies, and that Mara's return was filed just a few weeks before Mara sent a sizable payment to that shell company.

At the close of the government's case-in-chief and again at the close of all evidence, Cabrera moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied both motions. The jury found Cabrera guilty on all counts.

Id. at 803-05. After the Eleventh Circuit's affirmance of his conviction and sentence, Cabrera petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 3, 2016. See Cabrera v. United States, 137 S. Ct. 176 (2016).

## THE AMENDED MOTION TO VACATE

Cabrera's Amended Motion to Vacate lists the following grounds:

GROUND ONE: Ineffective assistance of counsel - trial counsel failed to object to the amount of intended loss and appellate counsel failed to raise the issue on appeal.

GROUND TWO: Ineffective assistance of counsel - trial counsel failed to subpoena witnesses and readily available documents/records; failed to use prior inconsistent grand jury testimony and documents in evidence to impeach key government witnesses that Cabrera prepared the tax return which served as the base for Count 2 of the Indictment.

GROUND THREE: The government violated Cabrera's due process rights by failing to comply with its obligations under Giglio.[2]

See Am. Motion to Vacate [D.E. 9 at 3-9].

On February 13, 2020, the Court adopted the prior Magistrate Judge's Report and Recommendation and denied Cabrera's Amended Motion to Vacate [D.E. 20]. Thereafter, the Court granted Cabrera's Rule 60(b) Motion and reopened the case because the prior Magistrate Judge had been involved in the government's case against Cabrera in her previous role at the

---

[2] Giglio v. United States, 405 U.S. 150 (1972).

United States Attorney's Office [D.E. 31]. The case was subsequently referred to the undersigned [D.E. 31, 33].³

## APPLICABLE LAW

### 1. *Ineffective assistance of counsel claims.*

A claim for ineffective assistance of counsel under 28 U.S.C. § 2255 is subject to the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant. Id. at 687.

As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. at 690. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "In reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (citing Strickland, 466 U.S. at 689). In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing Holladay v. Haley, 209 F.3d 1243, 1253 n.6 (11th Cir.

---

³ On April 21, 2021, after conducting a hearing and reviewing the parties' supplemental briefs, the undersigned denied Movant's requests for discovery, for an evidentiary hearing and for appointment of counsel and determined that this Report and Recommendation would be based on the existing record. See Order [D.E. 44].

2000)).  "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy.  Chandler, 218 F.3d at 1316 (footnote omitted) (citing Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998)); see also Strickland, 466 U.S. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different.  Strickland, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one.  Id. at 697.  The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." Chandler, 218 F.3d at 1313 (alteration omitted) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).  The burden of persuasion on the movant is preponderance of the evidence. Chandler, 218 F.3d at 1313.

### 2. *Due process/Giglio claim.*

"In order to prevail on a *Giglio* claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." Ventura v. Att'y Gen., 419 F.3d 1269, 1277 (11th Cir. 2005) (quoting Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999)).  "As the Supreme Court has explained, 'the Court has applied a strict standard of materiality [to *Giglio* violations], not just because they involve prosecutorial misconduct, but more importantly because they involve

a corruption of the truth-seeking function of the trial process.'" Id. at 1278 (quoting United States v. Agurs, 427 U.S. 97, 104 (1976)). Thus, under *Giglio*, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995) (quoting Agurs, 427 U.S. at 103).

## DISCUSSION

As noted above, Cabrera asserts the following claim in his Amended Motion to Vacate:

- ineffective assistance of trial and appellate counsel related to the amount of intended loss (Ground One);

- ineffective assistance of trial counsel for failing to subpoena witnesses and readily available documents/records; and failing to use prior inconsistent grand jury testimony and documents in evidence to impeach key government witnesses that Cabrera prepared the tax return which served as the base for Count 2 of the Indictment (Ground Two); and

- due process/*Giglio* violation by the government (Ground Three).

See Am. Motion to Vacate [D.E. 9 at 3-9]. As more fully discussed below, the undersigned finds no merit in any of these claims.

### A. Ground One - *Ineffective assistance of trial and appellate counsel re: intended loss amount*

According to the Pre-Sentence Investigation Report ("PSI"), "The false and fraudulent tax returns Cabrera filed and caused to be filed requested refunds from the IRS totaling $10,242,667. This amount includes an additional 100 income returns that were filed during the time period and in furtherance of the conspiracy in accordance with relevant conduct." See PSI [Case 13-20339, D.E. 118 ¶ 10]. The PSI also stated that, "According to the government, the tax loss proven at trial

8

was only $1,526,622." Id.  Application of the $10,242,667 intended loss amount resulted in a 20-level increase to the starting offense level pursuant to U.S.S.G. § 2b1.1(b)(1)(K). Id. ¶ 23.

In support of this ineffective assistance of counsel claim, Cabrera contrasts the intended loss amount of $10,242,667 used at sentencing, with the lower $1,526,622 tax loss amount proved at trial. See Am. Motion to Vacate [D.E. 9 at 3]. Cabrera posits that an even lower actual loss amount of $1,416,725 is supported by an email from the Probation Officer to the Assistant United States Attorney assigned to his case, which Cabrera attached as an exhibit to his Amended Motion to Vacate. Id. at 4; Ex. 1 to Am. Motion to Vacate [D.E. 9-3]. The email included the following question: "In compiling the numbers from the indictment, it looks like . . . Cabrera is responsible for loss/restitution to the IRS of $1,416,725 (for just the fraudulent returns he filed)." Ex. 1 to Am. Motion to Vacate [D.E. 9-3].[4]

According to Cabrera, the higher intended loss amount used at sentencing "resulted in Cabrera being assessed a much higher and incorrect Guideline level and being sentenced to a substantially longer period of incarceration, a Sixth Amendment and due process violation." Am. Motion to Vacate [D.E. 9 at 4]. Thus, Cabrera claims that Attorney Herrera was ineffective for not objecting to the $10,242,667 intended loss amount at sentencing; and that Attorney Rosenbaum was ineffective for not raising this issue on appeal. Id.

1. Performance prong

The PSI acknowledged that "the tax loss proven at trial was only $1,526,622", but explained that the higher "amount include[d] an additional 100 income returns that were filed during the time period and in furtherance of the conspiracy in accordance with relevant conduct." See PSI [Case 13-20339, D.E. 118 ¶ 10]. In his Objection to the PSI, Attorney Herrera raised

---

[4] Attorney Herrera, who represented Cabrera at sentencing, was not copied on this internal email. Id.

certain issues related to the guideline computation but accepted the PSI's 20-level increase based on the $10,242,667 intended loss amount. See Objections to PSI [Case 13-20339, D.E. 116 ¶ 11].

"Unless otherwise specified, a convicted defendant's guideline range is determined on the basis of all 'relevant conduct.'" United States v. Valarezo-Orobio, 635 F.3d 1261, 1264 (11th Cir. 2011) (citing United States v. De La Cruz Suarez, 601 F.3d 1202, 1221 (2010); U.S.S.G. § 1B1.1 cmt. n. 1(H)). "Relevant conduct includes not only the defendant's own acts in perpetration of the offense, but also 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" Id. (quoting U.S.S.G. § 1B1.3(a)(1)). Given the PSI's explanation that the higher amount was based on Cabrera's "relevant conduct," there was no basis for Attorney Herrera to challenge that amount and the corresponding 20-level increase. Moreover, as noted above, Attorney Herrera was not copied on the Probation Officer's internal email that Cabrera attached to his Amended Motion to Vacate. Therefore, the email is irrelevant to Attorney Herrera's performance at sentencing and to Attorney Rosenbaum's performance on appeal.

Based on the foregoing, it cannot be said that Attorney Herrera's and Attorney Rosenbaum's performance fell outside the wide range of professionally competent assistance. Strickland, 466 U.S. at 690. Accordingly, Cabrera has failed to establish the performance prong of the Strickland analysis and the undersigned need not address the prejudice prong. Id. at 697. However, the undersigned will do so for completeness.

2. Prejudice prong

To establish prejudice, Cabrera must show that, but for counsel's purportedly deficient performance, there is a reasonable probability the outcome of the sentencing proceedings and the appeal would have been different. Id. at 694. In its Response to the Amended Motion to Vacate (hereafter, "Response") [D.E. 11], the government proffered the Declaration of IRS Special Agent

10

Karyn Calabrese ("Agent Calabrese"), explaining the calculation of the $10,242,667 intended loss figure as set forth in an accompanying spreadsheet. See Calabrese Decl. [D.E. 11-2]; Spreadsheet [D.E. 11-1]. Relying on these materials, the government contends that, had Attorney Herrera challenged the intended loss amount, it "would have had no trouble proving that the loss was $10,242,667." See Response [D.E. 11 at 9]. Given the government's proffer, Cabrera cannot show a reasonable probability that his sentence would have been different if the intended loss amount had been challenged; or that his sentence would have been reversed if the issue had been raised on appeal. Therefore, Cabrera has also failed to establish the prejudice prong of the Strickland analysis.

Thus, Cabrera's Amended Motion to Vacate fails as to Ground One.

### B. Ground Two - Ineffective assistance of trial counsel re: witnesses and documents

In Ground Two, Cabrera argues that Attorney Herrera rendered ineffective assistance at trial by failing to subpoena witnesses and documents and failing to use prior inconsistent grand jury testimony and documents in evidence to impeach key government witnesses that Cabrera prepared the tax return which served as the base for Count 2 of the Indictment.

Cabrera was tried on the charges set forth in the Superseding Indictment that was returned on September 10, 2013 [Case 13-20339, D.E. 50]. In Count 2 of that instrument, Cabrera was charged with making a false claim in the 2008 amended tax return for J.D. filed on May 7, 2009, resulting in a $25,550 refund claim. Id. at 5. The gist of Cabrera's Ground Two argument is that the original Indictment showed the date of the 2008 amended tax return for J.D. as January 24, 2009, which is the date when Cabrera was released from immigration custody at 4:00 p.m. so he could not have filed J.D.'s 2008 amended tax return that day. See Indictment [Case 13-20339, D.E. 1 at 5].

11

1. Performance prong

Cabrera argues that Attorney Herrera was ineffective in failing to pursue the impossibility of the earlier tax return filing date at trial by presenting immigration documents and impeaching the trial witness with the grand jury testimony underlying the original Indictment. However, Cabrera's ineffective assistance arguments are misguided. "Filing a superseding indictment has the same effect as dismissing an original indictment . . . ." See United States v. McKay, 30 F.3d 1418, 1420 (11th Cir. 1994). Therefore, the tax return filing date appearing in Count 2 of the original Indictment had no relevance at trial. Moreover, there was no basis for Attorney Herrera to adduce the testimony of the grand jury witness, Agent Calabrese, to impeach the government's trial witness, Agent Victoria O'Brien ("Agent O'Brien"), with regard to the date discrepancy. See Response [D.E. 11 at 11-12]. Cabrera also argues that Attorney Herrera was ineffective for not challenging the January 24, 2009 conspiracy starting date charged in Count 1 on the same impossibility grounds. However, as argued by the government, evidence was adduced at trial that Cabrera had been studying the IRS code since April 2008. Id. at 13. Thus, there was no basis for any such challenge.

Based on the foregoing, it cannot be said that Attorney Herrera's performance fell outside the wide range of professionally competent assistance. Strickland, 466 U.S. at 690. Accordingly, Cabrera has failed to establish the performance prong of the Strickland analysis and the undersigned need not address the prejudice prong. Id. at 697. However, the undersigned will do so for completeness.

2. Prejudice prong

To establish prejudice, Cabrera must show that, but for counsel's purportedly deficient performance, there is a reasonable probability the outcome of trial would have been different. Id.

at 694. However, Cabrera cannot make such a showing, given that he was tried on the Superseding Indictment, which accurately reflected the filing date of J.D.'s 2008 amended tax return, and not on the original Indictment. Therefore, Cabrera has also failed to establish the prejudice prong of the Strickland analysis.

Thus, Cabrera's Amended Motion to Vacate fails as to Ground Two.

### C.  Ground Three -   Due process/*Giglio* claim

Cabrera predicates this claim on the same contentions he advances in Ground Two. See Memorandum of Law in Support of Am. Motion to Vacate [D.E. 9-1 at 6]. According to Cabrera, the government "elicit[ed] false testimony from Agent O'Brien, [J.D.] and others" in relation to the filing date of J.D.'s 2008 amended tax return. Id. at 7. There is no basis for this contention. Cabrera was tried on the Superseding Indictment, which rendered the original Indictment a nullity. McKay, 30 F.3d at 1420. Therefore, the testimony rendered at trial necessarily pertained to and comported with the Superseding Indictment. Thus, Cabrera cannot meet the strict standard required to prevail on a *Giglio* claim, which requires a showing that the government "used perjured testimony . . . and that the falsehood was material." Ventura, 419 F.3d at 1277.

Thus, Cabrera's Amended Motion to Vacate fails as to Ground Three.

### RECOMMENDATION

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that Cabrera's Amended Motion to Vacate [D.E. 9] be DENIED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable James I. Cohn, United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See

Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 22nd day of July, 2021.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:

United States District Judge James I. Cohn
Counsel of Record

Copies furnished via U.S. mail to:

Rigoberto Cabrera #33513-018
F.C.I. Miami Low Security
Post Office Box 779800
Miami, Florida 33177